*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. S. McINTYRE-JORDAN, Minor.

UNPUBLISHED
January 19, 2023

No. 362224
Wayne Circuit Court
Family Division
LC No. 2019-000829-NA

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to MM under MCL 712A.19b(3)(b)(*ii*) (failure to prevent physical injury or physical or sexual abuse to child or sibling), (i) (parental rights to sibling terminated due to serious and chronic neglect or abuse), and (j) (reasonable likelihood of harm if returned to parent). Respondent argues that the trial court clearly erred by finding statutory grounds for termination and by finding that termination was in MM's best interest. We affirm.

## I. FACTUAL BACKGROUND

Respondent and MM's father, Michael Deshawn Jordan,[1] have a long history with child protective proceedings and previous terminations of their parental rights. In September 2019, respondent's parental rights were terminated to MM's half-siblings, LCM and ASM, because of respondent's failure to protect them from sexual abuse. On appeal, this Court explained the relevant facts:

> According to the petition, LCM had been sexually abused by Michael Jordan, respondent's live-in boyfriend. Jordan molested LCM and made several attempts to orally penetrate her. Respondent admitted that LCM told her about the sexual abuse in February 2019, but did not do anything with the information because LCM,

---

[1] Jordan's parental rights to MM were also terminated, but he is not a party to this appeal. We discuss Jordan throughout this opinion to the extent his conduct is relevant to termination of respondent's parental rights.

who was nine-years-old at the time, did not give respondent enough details. According to respondent, she first learned about the extent of the sexual abuse when Child Protective Services (CPS) became involved. Respondent nevertheless continued to allow Jordan to stay in the house even after learning that he sexually abused LCM.

> The minor children [LCM and ASM] have a prior CPS history. In 2016, the minor children were made temporary court wards because respondent failed to protect the minor children from abuse. FM, LCM's father, was arrested for sexually abusing the cousins of the minor children. The minor cousins that were sexually abused by FM sexually abused ACM [sic: ASM]. The minor children remained in respondent's care and custody while respondent completed a parent-agency treatment plan. Despite FM's criminal conviction for criminal sexual conduct with a minor, respondent continued to allow contact—through telephone calls—between the minor children and FM.

> On May 2, 2019, Leticia Madlock conducted a Kids Talk Interview with LCM. During LCM's Kids Talk Interview, LCM said Jordan made several attempts to orally penetrate her and would rub his penis against her vaginal area. LCM told Madlock that she told respondent about the sexual abuse in November 2016. Respondent did not believe LCM when LCM tried telling respondent that Jordan was sexually abusing her and accused LCM of lying. LCM said that the sexual abuse began when she was five years old and that the sexual abuse happened " '[a] lot.' " [*In re Massey/McIntyre Minors*, unpublished per curiam opinion of the Court of Appeals, issued March 17, 2020 (Docket No. 350741), pp 1-2.]

The trial court terminated respondent's parental rights to LCM and ASM under MCL 712A.19b(3)(b)(*ii*) and (j), and this Court affirmed on those grounds. *Id*. at 2, 5-6.

In March 2020, respondent gave birth to SLJ, with Jordan as the biological father. Petitioner, the Department of Health and Human Services ("the Department"), intervened and sought termination of both parent's rights to SLJ. In June 2021, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), (i), and (j), and held that termination was in SLJ's best interests. *In re Jordan Minor*, unpublished per curiam opinion of the Court of Appeals, issued March 10, 2022 (Docket Nos. 357590, 357592), p 2. The trial court also terminated Jordan's parental rights to SLJ. *Id*. This Court affirmed termination in both matters and concluded that the trial court did not clearly err when it determined that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (i), and (j). *Id*. at 2-5. In relevant part, this Court stated:

> . . . [T]he record reflects that SLJ's sibling suffered sexual abuse, and respondent mother had the opportunity to prevent the sexual abuse but failed to do so. Furthermore, respondent mother acknowledged that she maintained a romantic relationship with [Jordan] after learning of the sexual abuse. Respondent mother allowed SLJ to live in the same home with [Jordan] after her birth. Although respondent mother maintained that her romantic relationship with [Jordan] had

-2-

since ended, multiple witnesses testified that respondent mother still resided with [Jordan]. [*Id*. at 3.]

On December 23, 2021, respondent gave birth to MM. Soon after, MM was removed from respondent's custody. The Department petitioned the trial court to take jurisdiction over MM and terminate respondent's parental rights to MM under MCL 712A.19b(3)(b)(*ii*), (g), (i), and (j). The petition recounted how respondent had lost parental rights to LCM, ASM, and SLJ because of her failure to protect them from sexual abuse by Jordan. The petition alleged that respondent "failed to rectify the conditions that led to the prior terminations of her parental rights, and she continuously denies any sexual abuse took place with her children." The referee found probable cause to authorize the petition against respondent and suspended parental visits, but the trial court authorized supervised visitation at the next pretrial hearing.

In April 2022, the trial court held a bench trial to determine whether statutory grounds for jurisdiction and termination existed. Before the start of witness testimony, the court admitted multiple exhibits introduced by the Department: the order of termination pertaining to LCM and ASM, the certified record of prior termination pertaining to SLJ, this Court's March 2020 decision in *Massey/McIntyre Minors*, and this Court's March 2022 decision in *Jordan Minor*. The trial court also took judicial notice of the court file for lower court case number 2019-000829-NA, which covered the proceedings involving MM and SLJ.

Jasmin Wilson, CPS specialist for the Department, testified that this case with MM started after the Department received a complaint based on respondent having previous terminations of her parental rights. Respondent told Wilson that she was no longer in a relationship with Jordan and that, although they were living together and had sexual relations to conceive MM, they were not in a relationship when MM was conceived. Respondent alleged that she stayed in the home with Jordan until she could get into a shelter. Before removal, respondent had been at a shelter with MM. When Wilson spoke with respondent in January 2022, respondent denied having firsthand knowledge that Jordan sexually abused LCM and stated that she was "unsure" if it had occurred.

Respondent agreed that MM was conceived around March 2021 and that she was living with Jordan at the time. She testified that when MM was conceived, she was aware of the circumstances leading to termination of her parental rights to LCM and ASM and that a court had found that Jordan sexually abused LCM. Respondent explained that she was not in a relationship with Jordan after these terminations, but they were living together because she did not have the income to go anywhere else. Respondent claimed that MM's conception was just "one night of us being together." She admitted that she did not believe the allegations of sexual abuse against Jordan until the June 2021 termination trial involving SLJ, but that she came to believe them after the court's ruling in that case. According to respondent, she now believed that Jordan sexually assaulted LCM, and she had no plans to get back together with him. She also testified that she had not seen Jordan since April 2021.

The trial court found statutory grounds to exercise jurisdiction under MCL 712A.2(b)(1) and (2).[2] The court also found by clear and convincing evidence that statutory grounds to terminate respondent's parental rights had been shown under MCL 712A.19b(3)(b)(*ii*), (i), and (j). The court found that respondent was the parent "who had the opportunity to prevent the sexual assault previously [against LCM] and did not do it." Respondent conceived two children with Jordan after LCM's disclosure of sexual abuse by Jordan, and thus the trial court did not believe that the conditions that brought MM into care had been rectified. The court noted that "[n]othing is different at this point," and that while respondent was now "saying what needs to be said" about Jordan perpetrating sexual abuse, respondent's "actions don't support her words." The court also found statutory grounds to terminate Jordan's parental rights to MM.

The bench trial continued in May 2022 to determine whether termination of respondent's parental rights was in MM's best interests. Sharon Hamilton-Martin, a forensic family physician, testified that she interviewed respondent and that respondent "minimize[d] what actually happened" to LCM by claiming it was just a "touch." Hamilton-Martin believed that respondent's actions throughout her parental history—the delay in believing LCM, not taking LCM to be examined after LCM's disclosure, and continuing to have a sexual relationship with Jordan after the allegations of abuse—showed that respondent put her children at risk.

Markieta Armstrong, the foster care manager on MM's case, observed respondent's parental visits with MM. Respondent consistently attended visitation, engaged with MM, and made sure to bring the necessary items. Armstrong also observed MM in her current foster placement, where MM had been since March 2022. MM was happy and healthy, attending daycare, and interacting well with teachers and other children. In Armstrong's opinion, MM seemed more bonded with the foster parent than with respondent. MM's foster parent testified that she lived alone with MM, was employed, and was willing to offer long term care to MM.

Respondent called Patrice Rosser, her best friend, to testify. Rosser stated that respondent was always there for her children, and made sure they were in school and had everything they needed. Rosser testified that respondent did not have contact with Jordan and even changed her phone number to avoid contact. As for the sexual abuse of LCM, Rosser testified that she and respondent "don't talk about it too much." Respondent waived her right to testify.

The court found that it was in MM's best interest to terminate respondent's parental rights. The court found "there's two people that have inappropriately touched children and [respondent] picked these two people and children were harmed in that space." Respondent blamed everyone

---

[2] Under these provisions, a court may exercise jurisdiction in child protective proceedings involving a juvenile "[w]hose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship" or "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." MCL 712A.2(b)(1) and (2).

but herself for what happened, but respondent was charged with protecting her children and she failed to do that. The court recognized that respondent might not have been able to move away from Jordan because of financial challenges. But "having to stay in the house with somebody and having an intimate relationship with somebody are two very different things." The court found that respondent still did not believe that Jordan sexually abused LCM, and that "she believes it enough to say it for our purposes and that's exactly where it stays at." The court also relied on the doctrine of anticipatory neglect to find that respondent's failure to protect LCM was probative of how respondent would act again. The court stated that MM "has a right to be raised in a safe and stable and permanent environment at this moment free of any potential future abuse or neglect from people that have demonstrated that they are, in fact, capable of doing so." For those reasons, the court found by a preponderance of the evidence that it was in MM's best interest to terminate respondent's parental rights and entered a termination order.

This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the statutory grounds cited by the trial court did not support termination of her parental rights to MM.

We review for clear error a court's findings of statutory grounds for termination. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The Department has the burden to make this showing. MCR 3.977(A)(3). Evidence is clear and convincing when it "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted; alterations in original). If at least one statutory ground for termination is established, we "need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (i), and (j). Respondent contends that the trial court clearly erred in each of its findings of statutory grounds. We choose to begin with the trial court's finding of clear and convincing evidence to support termination under MCL 712A.19b(3)(j). This provision authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j).

In this case, the trial court admitted without objection this Court's prior opinions affirming termination of respondent's parental rights and took judicial notice of the court file, which contained petitions and orders in the child protective proceedings involving MM and SLJ.

Together with the testimony from the bench trial, the evidence presented to the trial court substantiates that MM faced a reasonable likelihood of harm if returned to respondent's custody.

Respondent's previous terminations all stemmed from findings that she failed to protect LCM from sexual abuse perpetrated by Jordan and placed all her children at risk of harm. See *Massey/McIntyre Minors*, unpub op at 2, 5-6; *Jordan Minor*, unpub op at 3-5. But not only did respondent fail to protect LCM from the sexual abuse when it happened, she amplified the harm to LCM and her other children by maintaining a relationship with Jordan and disbelieving LCM for so long. Although respondent testified in this case that she now believed LCM—and had since the June 2021 termination trial involving SLJ—the trial court found her claims lacking credibility. We "must defer to the special ability of the trial court to judge the credibility of witnesses," *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014), and the trial court's credibility determination was well-supported by ample evidence of respondent's ongoing failure to believe LCM. The trial court reasonably believed that respondent was simply saying what she needed to say this time around to retain rights to MM, when her actions suggested otherwise.

Further, respondent remained in a relationship (sexual or otherwise) with Jordan for at least two years after LCM's disclosure of sexual abuse. Despite respondent's protestations that she was not in a relationship with Jordan in March 2021 when conceiving MM, she chose to have sexual relations with a man who multiple courts found had sexually abused her older daughter. This is no mere oversight. Even accepting respondent's contention that she only resided with Jordan for financial reasons, the trial court correctly noted that there is a major difference between residing with the man who sexually abused your daughter out of necessity and conceiving another child with that man. Sadly, respondent downplayed her continued intimacy with Jordan as just "one night of us being together," and she did not seem to grasp the gravity and consequences of her decisions. Respondent's continually poor decision-making, culminating in sexual activity with Jordan that led to MM's birth, establishes a reasonable likelihood that MM would suffer harm if returned to respondent's custody.

The doctrine of anticipatory neglect also supports the trial court's finding of statutory grounds. This doctrine provides that "the parents' treatment of other children is indicative of how they would treat the child in question." *Foster*, 285 Mich App at 631. "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The anticipatory neglect doctrine holds considerable inferential weight here. This case presents the third occasion in which respondent maintained ties with Jordan after finding out that Jordan sexually abused LCM. Respondent first allowed Jordan to remain around LCM and ASM, then conceived SLJ with Jordan and allowed SLJ to be around Jordan, and then conceived MM with Jordan. While there is no evidence that respondent brought MM around Jordan in the short time that she had custody of MM, she displayed a consistent pattern of disturbing conduct that placed her children at direct risk of harm. Considering how respondent treated multiple children in the past, including SLJ who was of similar age to MM, there is a reasonable likelihood that she would similarly place MM at risk of harm. Thus, we are not left with a definite and firm conviction that the trial court erred by concluding it was reasonably likely that MM would suffer harm if returned to respondent's custody. The trial court did not clearly err by terminating respondent's parental rights to MM under MCL 712A.19b(3)(j).

Because clear and convincing evidence supported termination under MCL 712A.19b(3)(j), we decline to consider whether the trial court properly found statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*) and (i). See *Foster*, 285 Mich App at 633.

## III. BEST INTERESTS

Respondent lastly argues that termination of her parental rights was not in MM's best interests.

We review a trial court's best-interests determination for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). "Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available" to determine the best interests of the child. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). Factors to consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). Other relevant considerations are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

The trial court did not clearly err by finding that termination of respondent's parental rights was in MM's best interests. As already discussed, respondent exhibited a remarkable lack of judgment across several child protective proceedings. Despite LCM disclosing sexual abuse by Jordan in February 2019 or earlier, see *Massey/McIntyre Minors*, unpub op at 1-2, respondent remained in a relationship with him, resided with him, and conceived two children with him, including MM. The trial court did not believe respondent's newfound claim that she finally believed LCM had, in fact, been sexually abused by Jordan. And to the extent that respondent suddenly believed—in June 2021—that Jordan had sexually abused LCM, that lengthy delay underscores the trial court's reasonable concern that respondent was ill-equipped to protect MM from sexual abuse. It is, of course, in MM's best interest to be in an environment free of sexual abuse, including the risk that such abuse will occur by being exposed to predatory individuals. Time and again, respondent showed that she could not be trusted to protect her children from such an environment.

MM was also healthy, attending daycare, and doing well in foster care. MM's non-relative foster parent was willing to provide long term care to MM. The foster care worker believed that MM was more bonded with her foster parent than with respondent. MM deserved a stable and permanent home free of sexual abusers, and her foster care placement provided that environment. In sum, the trial court did not clearly err by finding termination of respondent's parental rights was in MM's best interests.

Affirmed.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett